# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| GARY W. UEBEL and CHRISTINA UEBEL, | )<br>) |
| Appellants, | )<br>) |
| v. | ) Case No. 4:19-cv-00032-TWP-DML<br>) |
| WILLIAM C. EVANS, | )<br>) |
| Appellee. | )<br>) |
| U.S. TRUSTEE, | )<br>) |
| Interested Party. | ) |

**ENTRY ON PENDING MOTIONS**

This Bankruptcy Appeal is before the Court on a Motion to Remand for New Trial (Filing No. 17) and Motion to Supplement Record (Filing No. 18) filed by Appellants Gary Uebel and Christine Uebel ("the Uebels"). For the reasons set forth in this Entry, the Uebels' Motion to Remand—which is properly construed as a motion to voluntarily dismiss this appeal and have the matter returned to the Bankruptcy Court under the circumstances presented here—is **granted**. In addition, the Uebels' Motion to Supplement the appellate record is **denied**.

## I. BACKGROUND

After Appellee William C. Evans ("Evans"), who had built a home for the Uebels, declared bankruptcy, the Uebels accused him of false pretenses, false representation, and fraud. They argued, under 11 U.S.C. § 523(a)(2), that Evans should not be allowed to discharge the debt he owed them. The dispute went to trial in the United States Bankruptcy Court, Southern District of Indiana, where the bankruptcy judge ruled in favor of Evans.

The Uebels appealed that ruling to this Court in February 2019 and filed a brief in support of their appeal on May 1, 2019. (Filing No. 7.) Evans never responded to that brief despite an Entry from this Court directing him to do so. (Filing No. 14.) On January 15, 2020, the Uebels filed three motions based on newly discovered evidence: (1) they moved for a new hearing (Filing No. 16); (2) they moved for a remand to the Bankruptcy Court for a new trial (Filing No. 17); and (3) they moved to supplement the appellate record (Filing No. 18). The Court denied the Uebels' Motion for a new hearing (Filing No. 22).

The Bankruptcy Court's Findings of Fact state[1]:

> After the Plaintiffs, Gary and Christina Uebel ["Plaintiffs"], lost their residence in a fire, they contacted an architect and had plans drawn up for a new home. Unfortunately, for tax or insurance purposes, the Plaintiffs' insurance company advised them that the new home had to be constructed within a year of the fire or they would lose 25% of the payout. That presented a challenging time constraint for the Plaintiffs. After meeting with at least three builders that could not accommodate that deadline, their architect recommended that Plaintiffs meet with William Evans ["Evans"] of Evans Built Home, LLC., which they did. After meeting with Evans several times and agreeing on certain terms, the Plaintiffs entered into a contract on August 13, 2013, with Evans Built Homes, LLC for the construction of a home to be built at 22607 Tom Hurst Lane in Borden, Indiana ["Contract"]. Evans signed the Contract as a representative of Evans Built Homes, LLC.

> The Contract was negotiated on a "cost plus" coordination basis, with all labor, materials, permits and insurance figured as costs plus 13%. The Contract provided for an approximate completion date of 7.5 months from the start date, barring inclement weather, and quoted a pre-construction estimate for construction costs and coordination at $515,000. Although the Contract also provided that any changes to the original plans or specifications were to be made in writing, that provision was never enforced. At the time the parties entered into the Contract, the Construction Lender was yet to be determined. Lender financing was subsequently secured, and the Plaintiffs obtained a construction loan in the amount of $480,000, based upon the architectural plans which had been prepared.

---

[1] The Bankruptcy Judge issued Findings of Fact and Conclusions of Law in this case. (Filing No. 7-1 at 4.) On an appeal from the Bankruptcy Court, this Court accepts the facts as recounted by the Bankruptcy Court unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011). Thus, the Court will provide the facts as stated in the Bankruptcy Judge's Findings of Fact unless the Court is, after reviewing the evidence, "left with the definite and firm conviction that a mistake has been committed." *Kovacs v. U.S.*, 614 F.3d 666, 672 (7th Cir. 2010) (quoting *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009)).

Gary Uebel ["Uebel"] testified that Evans represented himself verbally and on his website as a "Registered Builder that is Licensed, fully insured," with a five-star energy rating. Uebel further testified that Evans told him that he had numerous years of experience, his own crew, and he could finish the job in seven and a half months. According to Uebel, during a virtual walkthrough of the home, Evans said he could provide a full build-out with certain requested amenities for $515,000. Evans, on the other hand, denied that he told Uebel the bulk of those things. While Evans is an experienced builder, he does not, in fact, have a contractor's license or his own crew. He testified that when he met with the Plaintiffs, he told them that he was not a registered builder because they specifically asked. He further explained that he had been licensed in various localities but, because of the attendant licensing fees, he only held a license when it was required. Clark County does not require a license, so Evans stated did not have one (sic). He also denied telling the Uebels that he had a five-star energy certification.

Clearly, the testimony of the parties is in direct contradiction to one another. The website does provide proof of a misrepresentation regarding Evans' credentials, but Uebel did not specifically testify that he saw the website prior to entering into the contract with Evans. In any event, the Court suspects that the Plaintiffs relied more upon the recommendation of their architect than the Debtor's website. Further, and more significantly, the Plaintiffs were operating under a very tight deadline. Their overarching priority was completing the new construction within a year of the fire which had destroyed their first home. After meeting with three builders who could not meet their needs, the Court believes that the Plaintiffs contracted with Evans because he represented that he could complete the job within that time frame per the Plaintiffs' specifications. It is the Court's opinion that Evans intended to comply with the contract specifications when he entered into the Contract.

Uebel acted as general contractor in building his first home wherein he hired and supervised subcontractors. Having some knowledge of the building process, Uebel asked to participate in the design and construction process to offset a portion of the expense, and Evans encouraged him to do so. Plaintiffs thus provided some materials and fixtures themselves and perhaps contributed a minor amount of labor. Uebel stayed in close communication with Evans as the home was being built either in person, via text, or telephone. The arrangement began well enough but toward the end of the construction, with both Uebel and Evans drawing funds from the same construction loan, Evans became increasingly concerned about payment. The relationship soured and the Plaintiffs demanded an accounting from Evans. When that was not forthcoming, after having paid Evans approximately $447,000, the Plaintiffs refused to make final payment.

According to Uebel, Evans completed the job within ten months of entering into the contract, but several problems with the construction quickly became evident. Foremost among those involved the use of a heavy stone product on the exterior of the home, including the chimney and dormers. The stone was a modification to the original construction plans. Because the house was already

3

framed when the stone was selected, the additional weight of the stone was not adequately accounted for in the supporting frame. As a result, various structural infirmities manifested in cracked drywall and masonry and sagging headers. Similarly, when standard insulation was upgraded to spray foam, increased humidity in the home led to major flooring issues.

When the Plaintiffs withheld final payment, Evans filed a mechanic's lien on the property and the Plaintiffs filed a counterclaim. Although the parties reached an informal settlement of those claims, the settlement was never finalized, and the dispute was left unresolved. Evans filed bankruptcy on January 2, 2018, and this adversary proceeding was commenced on March 12, 2018.

([Filing No. 7-1 at 2-5](Filing No. 7-1 at 2-5).)

The Bankruptcy Court's Conclusions of Law were comprised of two sections—"False Representation" and "Actual Fraud." *Id.* at 6-8. In the section on False Representation, the court focused on the statement from Evans' website that said he was a licensed builder even though he was not. It found Evans' testimony that he told the Uebels that he was not a licensed builder to be credible, and thus determined the Uebels could not have justifiably relied upon the website's claim. *Id.* at 6-7. In the Actual Fraud section, the court determined that the Uebels had not shown by a preponderance of the evidence that Evans had intended to defraud them or that the purported fraud was the cause of their debt. *Id.* at 7-8. In reaching the first of those two conclusions, the court noted that "from the $447,000 that [Evans] was paid by the Plaintiffs, he paid all the vendors and subcontractors." *Id.* at 7. The court found it "unlikely that Evans would have paid the subcontractors, and invited litigation by filing his own mechanic's lien, if he had wittingly enticed the Plaintiffs into a fraudulent scheme." *Id.* at 8. The Bankruptcy Court ultimately ruled in favor of Evans, determining his debt was dischargeable under Section 523(a)(2).

The Uebels appealed that ruling. ([Filing No. 1](Filing No. 1).) In their appeal, the Uebels assert that the Bankruptcy Court committed error by neglecting to consider "false pretenses" under Section 523(a)(2)(A). ([Filing No. 7 at 12](Filing No. 7 at 12).) They also assert it was erroneous for the Bankruptcy Court to require proof of an overt misrepresentation. *Id.* In their brief on appeal, the Uebels ask this Court

to reverse the judgment from the Bankruptcy Court and find Evans' debt non-dischargeable under Section 523(a)(2). *Id.* at 23. Evans did not respond to the Uebels' appellate brief despite direction from this Court to do so ([Filing No. 14](#)), nor has Evans responded to any of the Uebels' motions in this appeal.

Since filing their appeal, the Uebels have filed three other relevant motions with the Court, and this Entry addresses two of them. All three motions are based on the Uebels' discovery of previously undiscovered evidence that was not considered by the Bankruptcy Court. That evidence is an affidavit signed by Michael L. Daulton ("Daulton") of DCM Construction, LLC, a subcontractor who performed work on the deck of the Uebel home. ([Filing No. 18-1](#).) Daulton has reviewed invoices that purport to show work done by DCM Construction on the Uebel home and the amounts charged to Evans for that work. In his affidavit, Daulton swears that neither he nor anyone at his company performed that work, leaving the impression that the invoices were falsified by Evans. *Id.* Based on this new evidence, the Uebels have moved separately for a hearing before the Court ([Filing No. 16](#)), a remand to the Bankruptcy Court for a new trial ([Filing No. 17](#)), and/or to supplement the record with Daulton's affidavit ([Filing No. 18](#)). The Court has denied the motion for a hearing ([Filing No. 22](#)), and now considers the other two pending motions in turn.

## II. DISCUSSION

### A. Motion to Supplement the Record

Under Fed. R. Bankr. P. 8006, a court reviewing an appeal from a bankruptcy court decision considers only the evidence that was part of the factual record below. This evidence includes "the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court." Fed. R.

Bankr. P. 8006.  The only federal bankruptcy rule that addresses supplementation is Fed. R. Bankr. P. 8009(e), which the Uebels cite in their Motion to Supplement the Record.  ([Filing No. 18](#).)  Rule 8009(e) was enacted in 2014 and authorizes a district court to correct or modify the record on appeal "[i]f anything material to either party is omitted from or misstated in the record by error or accident."  Fed. R. Bankr. P. 8009(e)(2)(C).

Rule 8009(e) adopts the text of an analogous rule in the Federal Rules of Appellate Procedure.  *Cf.* Fed. R. App. P. 10(e) ("If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded: … by the court of appeals."); *see also* Committee Notes on Rules—2014 Amendments ("Subdivision (e), modeled on Fed. R. App. P. 10(e), provides a procedure for correcting the record on appeal if an item is improperly designated, omitted, or misstated.").  In the Seventh Circuit, pursuant to Rule 10(e), an appellate court generally "will not consider evidence on appeal that was not before the district court when it rendered its decision.  Adding new evidence would essentially convert an appeal into a collateral attack on the district court's decision."  *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 946 (7th Cir. 2016).  The purpose of both Fed. R. App. P. 10(e) and Fed. R. Bankr. P. 8009(e) is to ensure the appellate court has a complete and accurate record of the proceedings that occurred in the original court, not to present new evidence to the appellate court that the original court never considered.  As another district court recently put it, "Rule 8009(e) provides an avenue to correct the record on appeal and to bring it in conformity with the bankruptcy court record, rather than a mechanism for supplementing the record on appeal with new information that was never considered by the bankruptcy court."  *In re Salas*, 2020 WL 32567 at *2 (D. D.C. January 2, 2020).

The Uebels' request to supplement the record does not satisfy Rule 8009(e) because it asks the Court to consider new evidence on appeal that was not before the Bankruptcy Court. The purpose of Rule 8009(e) is to allow supplementation when, "by error or accident[,]" documents considered by the Bankruptcy Court were either "omitted from or misstated in" the record transmitted to this Court. Fed. R. Bankr. P. 8009(e)(2)(C). Not only did the Bankruptcy Judge not consider the affidavit the Uebels attempt to put into the record here, he could not have considered the affidavit because it was not created until after he had resolved the matter.[2] Therefore, the Court **denies** the Uebels' Motion to Supplement the Record.

**B.     Motion for Remand**

The Uebels "believe this matter should be remanded to the Bankruptcy Court for consideration of this [new] evidence as part of a new trial." (Filing No. 18.) Their Motion cites no rule or caselaw that empowers the Court to offer such a remedy under these circumstances. And although Fed. R. Bankr. P. 8013 allows a district court to affirm, modify, or reverse a bankruptcy judge's judgment, or to order, decree, or remand with instructions for further proceedings, the Court need not do so here. The Uebels have moved for a new trial before the Bankruptcy Court based on evidence they discovered after the conclusion of their trial. The Court infers that they wish to litigate this new evidence before the Bankruptcy Court—the appropriate body to consider that evidence.

The Court imagines the proper form this request should take is a motion directly to the Bankruptcy Court for a new trial under Fed. R. Bankr. P. 9023 or for relief from judgment under Fed. R. Bankr. P. 9024. Indeed, the Uebels have filed or attempted to file several such motions in the Bankruptcy Court despite this pending appeal. Immediately following the trial before the

---

[2] Bankruptcy Judge Basil H. Lorch issued his findings of fact and conclusions of law in this matter on January 18, 2019. (Filing No. 7-1.) The affidavit the Uebels offer was created on May 20, 2019. (Filing No. 18-1.)

Bankruptcy Court, on February 1, 2019, the Uebels filed a Motion to Alter or Amend under Rule 9023 that the Bankruptcy Court denied. On January 18, 2020, three days after filing their Motion to Remand in this Court, the Uebels filed a Rule 9024 motion in the Bankruptcy Court. The Bankruptcy Court deferred ruling on that motion in accordance with Fed. R. Bankr. P. 8008(a)(1), which allows the court to defer considering a motion when a pending appeal has deprived it of authority to grant a motion.

As the Court has stated, Evans has waived his right to be heard in this appeal by failing to file appellate briefing or any other document. Therefore, the Court will liberally treat the Uebels' Motion to Remand under Fed. R. Bankr. P. 8013 as a motion for voluntary dismissal of this appeal pursuant to Fed. R. Bankr. P. 8023. The grant of such a motion would enable the Bankruptcy Court to consider the Uebels' Rule 9024 motion.

So construed, the Court **grants** the Uebels' motion to voluntarily dismiss the instant appeal. Under Rule 8023, "[a]n appeal may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the district court[.]" The Seventh Circuit recognizes that "[a]n appellant may withdraw its appeal at any time." *In re Memorial Hosp. of Iowa Cnty., Inc.*, 862 F.2d 1299, 1303 (7th Cir. 1988). Absent any argument to the contrary, the Court finds it is in the interest of both justice and judicial economy to dismiss this appeal so that the Uebels can litigate material issues of fact before the Bankruptcy Court.

### III.    <u>CONCLUSION</u>

For the reasons stated above, Appellants' Motion to Remand for New Trial ([Filing No. 17](#))—which is properly construed as a motion to voluntarily dismiss this appeal and have the matter returned to the Bankruptcy Court under the circumstances presented here—is **GRANTED**. Appellants' Motion to Supplement the Record ([Filing No. 18](#)), is **DENIED**.

Consequently, this appeal is **DISMISSED without prejudice**.

**SO ORDERED.**

Date: 2/13/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

James F. Guilfoyle
GUILFOYLE LAW OFFICE, LLP
james@guilfoylelawoffice.com

William Edward Skees
THE SKEES LAW OFFICE
ed@skeeslegal.com

Steven S. Lohmeyer
lohmeyerlaw@aol.com